**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | : | |
|---|---|---|
| ELAINE SHOWE | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-08-2955 |
| MARYLAND DEPARTMENT | : | |
| OF PUBLIC SAFETY AND | : | |
| CORRECTIONAL SERVICES | : | |

...o0o...

## MEMORANDUM

Now pending before the court is a motion for leave to file an amended complaint, filed by plaintiff Elaine Showe. Ms. Showe is suing defendant Maryland Department of Public Safety and Correctional Services (MDPSCS) for discriminating against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, by allegedly discharging her for being unable to perform essential job functions, when similarly situated male employees – namely, male employees with similar impairments performing similar job functions – were not. The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, plaintiff's motion will be denied.[1]

## BACKGROUND

The following facts are presented in the light most favorable to the plaintiff. Beginning on January 2, 1985, Ms. Showe worked for MDPSCS at its correctional facility in Hagerstown,

---

[1] Ms. Showe also filed an alternative motion to remand, "in the event Defendant claims immunity in federal court as to some or all of the new allegations." (Pl.'s Mot. to Remand at 1.) Because I am denying her motion for leave to file an amended complaint containing these new allegations, for reasons to be discussed, this motion is moot.

1

Maryland ("the Hagerstown facility" or "Hagerstown").  In 1992, she became a Correctional Case Management Assistant for MDPSCS, the position she retained up until her termination.  Ms. Showe went on medical leave from January 21, 2002 until January 2, 2003 in order to receive reconstructive knee surgery and related treatment to address an apparent employment-related injury.  When she returned from leave, she requested and received an accommodation that allowed her to perform administrative duties that required significantly less walking than normal.  She went on medical leave again from June 2005 to November 2005 for another major knee operation.  This time, when she requested an accommodation upon her return, she claims that the request was denied.  Instead, she was placed on restricted duty until March 1, 2006.

In January of 2006, pursuant to instructions from Hagerstown's Assistant Warden, D. Kenneth Horning, the State Medical Director, Dr. Warren Beatie, performed a physical examination on Ms. Showe.  As a result of this examination, Dr. Beatie informed MDPSCS on February 10 of his view that Ms. Showe was "unlikely" to be able to perform all of the essential functions of her position, even with reasonable accommodation, for the foreseeable future.  On April 24, Ms. Showe requested that MDPSCS consider the examination results and diagnosis of another physician, but this request was denied.  Ms. Showe was terminated shortly thereafter, on May 3.  When she entered the state retirement system afterward, on or about July 1, 2006, she was placed on "Ordinary Disability Retirement."

On or about March 14, 2007, the EEOC received Ms. Showe's Charge of Discrimination, which she had signed and dated February 5, 2007.  In her charge she alleged discrimination on the basis of gender and disability due to her termination after a mandatory physical examination, while "[s]imilarly-situated males with disabilities did not have to take an examination" that

2

might result in their termination.  (Def.'s Opp. to Mot. to Amend at Ex. A., EEOC Charge at 1.)  She also alleged retaliation for participating in a protected activity (which she did not specify).

The EEOC concluded its investigation on June 19, 2008, finding no violations, and issued Ms. Showe a Dismissal and Notice of Rights letter (otherwise known as a "Right to Sue" letter) on June 23.  Ms. Showe then filed suit in state court on September 22, alleging violations of Title VII, Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Article 49B of the Maryland Code.  Because her complaint alleged multiple violations of federal law, the suit was removed to this court on November 5.

On February 5, 2009, upon motion from MDPSCS, I dismissed with prejudice all of Ms. Showe's state law claims and her ADA claim, and dismissed without prejudice her Title VII claim, allowing her to "seek leave to amend her complaint to state a claim for gender discrimination under Title VII."  (Feb. 5, 2009 Order ¶ 3.)  She did so on February 26.  The amended complaint re-alleges in greater detail MDPSCS's gender-based violation of Title VII, and also adds four new counts under both federal and state law, some of which are aimed at new individual plaintiffs.[2]

## ANALYSIS

"Disposition of a motion to amend is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182

---

[2] These counts allege violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, by MDPSCS; violation of 42 U.S.C. § 1983 by newly named defendants D. Kenneth Horning, Dr. Warren Beatie, Leonard Vaughan (Manager of the Correctional Case Management Department), and Olen Brake (Ms. Showe's immediate supervisor); and violations of Articles 24, 26, and 46 of the Maryland Constitution's Declaration of Rights by those newly named defendants.

(1962)). While Rule 15(a)(2) encourages the court to "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave is not to be granted automatically. *Deasy*, 833 F.2d at 40. A court may properly deny a motion for leave to amend where such amendment would be futile, for example where, even with the amendments, the complaint still fails to state a claim upon which relief may be granted. *See, e.g.*, *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (affirming district court's denial of motion to amend on grounds of futility where proposed amended complaint still failed to state a claim); *see also In re PEC Solutions, Inc. Securities Litigation*, 418 F.3d 379, 391 (4th Cir. 2005).

As a preliminary matter, the court will not entertain Ms. Showe's new proposed claim against MDPSCS, nor will it entertain the addition of several individual defendants and the new claims raised against them. My order allowing Ms. Showe to seek leave to amend her complaint was limited to her charge of gender discrimination under Title VII; it was not intended as an invitation to expand the parties and counts in her suit.

Even assuming such broad amendments may be proper, none of these new allegations state a claim upon which relief may be granted, and so all are futile. In order for a plaintiff to successfully state a claim, the factual allegations of her complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] . . . of a few conclusory legal terms does not insulate a

complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

Ms. Showe's proposed Rehabilitation Act claim fails because she has not shown that she could perform the essential functions of her job with reasonable accommodation. *Tyndall v. National Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) ("Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation."). Ms. Showe was absent for 1.5 out of her last 4.5 years at her job. When she was at work, she concedes she was not performing all of her previously assigned functions, and admits that the state medical director found her unlikely to be able to perform all of the essential functions of her position, even with accommodation, for the foreseeable future. Unfortunately, Ms. Showe has provided no evidence in her amended complaint, other than her bare allegation (Amend. Compl. ¶ 17), indicating that she was "otherwise qualified." Hence her Rehabilitation Act claim fails. *See generally Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995) ("[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position.").

Ms. Showe's proposed gender-based equal protection claim under § 1983 fails because she has not alleged facts illustrating a violation of equal protection. In order to make out an equal protection claim, a plaintiff must put forward facts sufficiently demonstrating that: (1) she has been treated differently from others similarly situated, and (2) the unequal treatment was "the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). At the least, Ms. Showe has failed to put forward any facts showing that her

5

allegedly unequal treatment – being subjected to physical examination and subsequent termination for her disability while other "similarly disabled" male coworkers were not (Amend. Compl. ¶ 36) – was the result of intentional or purposeful discrimination. Indeed, regarding new defendants Mr. Vaughan and Mr. Brake, she has alleged no specific facts at all, let alone facts suggestive of discrimination. As for Mr. Horning and Dr. Beatie, there is no indication in her amended complaint that the former's ordering of the physical examination and the latter's performance of that examination was the result of intentional or purposeful discrimination, other than her bald statement that it was. (*See* Amend. Compl. ¶ 38.)

Even if it could be argued that, by examining and then terminating her but not other disabled male employees, Mr. Horning and Dr. Beatie deprived her of equal protection, as state officials they would be entitled to qualified immunity from suit here, since it would not have been clear to them that such an examination would violate her constitutional rights. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997) (state officials performing discretionary functions are entitled to qualified immunity from suit to the extent that their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As MDPSCS points out, the State Medical Director is mandated by law to perform physical examinations of state employees to determine their fitness for continued employment, so such examinations are generally lawful. Md. Code Regs.17.04.03.16 B(3) (tasking the State Medical Director with "conduct[ing] any . . . medical examinations or studies concerning the medical fitness of employees"). Accordingly, if Ms. Showe had a constitutional right not to be subjected to the examination that led to her termination, that right was not clearly established at the time.

Finally, Ms. Showe's proposed additional state law claims fail because the newly named defendants, as state employees, are immune from suit as to these claims under the Maryland Tort Claims Act ("MTCA"), Md. Code, State Gov't §§ 12-101 *et seq.* The MTCA, which provides a limited waiver of the state's sovereign immunity for tort actions, states that "state personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article." Md. Code, State Gov't § 12-105. The liability described under § 5-522(b) is "liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence...." Md. Code, Cts. & Jud. Proc. § 5-522(b). In order for the new defendants not to be immune from suit on her state law claims, Ms. Showe would need to show that their actions were outside the scope of their public duties, which she has failed to do (or even allege), or she would need to show – with at least some specificity – that the defendants acted with either malice or gross negligence. This would mean showing either that the defendants' conduct was "motivated by ill will, by an improper motive, or by an affirmative intent to injure," or that it was carried out "with wanton or reckless disregard for the safety of others." *Young v. City of Mt. Rainier*, 238 F.3d 567, 578-79 (4th Cir. 2001) (internal quotations and citations omitted). This she has failed to do. Simply alleging that the defendants acted with malice (Amend. Compl. ¶ 38), without more, does not suffice. *See White v. Maryland Transp. Auth.*, 151 F. Supp. 2d 651, 657 (D. Md. 2001).

Returning to Ms. Showe's gender discrimination charge, her amendments in this regard still fail to save this portion of her complaint. First, it appears that this charge is barred by the applicable statute of limitations. Second, even if it were not time-barred, the amended charge

still fails to state a claim upon which relief may be granted, rendering it futile.

Regarding the statute of limitations, MDPSCS now points out that, while Ms. Showe alleged in her EEOC charge that the last date of discriminatory conduct against her was May 1, 2006, her charge – despite being dated February 5, 2007 – was not filed until March 14, 2007, 318 days later.[3] (*See* Def.'s Opp. to Mot. to Amend at Ex. A., EEOC Charge at 1.) Because the statute of limitations requires the charge to be filed within 300 days after the latest discriminatory act, 42 U.S.C. § 2000e-5(e)(1), and because a charge is considered filed when received by the EEOC, 29 C.F.R. § 1601.13(a)(1), Ms. Showe's gender discrimination claim is time-barred.[4]

---

[3] In her EEOC charge, Ms. Showe states: "In May 2006, I was officially discharged from my job." (Def.'s Opp. to Mot. to Amend at Ex. A., EEOC Charge at 1.) If the court were to read this statement as including May 3, the date of her termination, despite the fact that she wrote elsewhere on the EEOC charge that May 1, 2006 was the last date of discriminatory conduct, it would mean her claim was filed 316 days later.

[4] In her amended complaint, Ms. Showe now alleges an additional event of discriminatory conduct on July 1, 2006. On this date, she claims she was "placed on 'Ordinary Disability Retirement' by Defendant." (Amend. Compl. ¶ 25.) She now appears to consider this date as her termination date, despite stating elsewhere in her complaint that she was terminated on May 3. (*Compare* Amend. Compl. ¶ 28 *with id.* ¶ 6.) While this act, if considered to be the last date of discriminatory conduct, would put her within the 300-day period, it is outside the scope of her EEOC charge and so cannot be considered. Title VII suits are limited to "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996); *see Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (claims outside the scope of the EEOC charge are procedurally barred). Ms. Showe's EEOC charge, filed well after this alleged July event, makes no reference to it. Rather, it alleges discrimination in the form of a physical examination that led to termination "[i]n May 2006 . . . . for not being able to perform the essential functions of my job" while other "[s]imilarly-situated males with disabilities" did not have to take a physical examination that exposed them to termination. (Def.'s Opp. to Mot. to Amend at Ex. A., EEOC Charge at 1.) This allegation of discriminatory termination – and not the placement on "Ordinary Disability Retirement" – is the one repeated in the gender discrimination section of her amended complaint. (Amend. Compl. ¶¶ 29-32.) Further, the placement on disability

Regarding the amended claim itself, the court finds that a *prima facie* claim for gender discrimination under Title VII still has not been made. To state such a claim absent direct evidence, Ms. Showe must put forth indirect evidence demonstrating that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time; and (4) her position remained open or was filled by similarly qualified applicants outside the protected class. *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). This fourth element may be adapted to the circumstances of the particular case, such as requiring, at the fourth step, a showing that Ms. Showe was treated less favorably with regard to her disability than male employees under similar circumstances. *See Holmes v. e.spire Communications*, 135 F. Supp. 2d 657, 661-662 & n.4 (D. Md. 2001); *cf. Miles v. Dell, Inc.*, 429 F.3d 480, 486-87 (4th Cir. 2005).

It is undisputed that Ms. Showe, as a woman, is a member of a protected class. Further, Ms. Showe's termination was an adverse employment action. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656-657 (4th Cir. 1998) (citing *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) for the proposition that termination is an adverse employment action). Ms. Showe has not provided evidence in her amended complaint, however, that shows she was performing her job duties at a level that met her employer's legitimate expectations at the time of her termination. Ms. Showe states that she received regular raises and good evaluations and that her work performance was "never subject to criticism." (Amend. Compl. ¶ 28.) She also admits, however, that as of March 2006 she was

---

retirement appears to be only an incidental consequence of the identified adverse action, not an independent ground for a Title VII suit.

placed on restricted duty, apparently as a result of the State Medical Director's prognosis that she would likely not be able to perform all of the essential functions of her position for the foreseeable future. This fact – combined with her protracted absences from work during her final years there – suggest that she was not performing her job duties at a level that satisfied MDPSCS at the time she was terminated.

Even assuming Ms. Showe has sufficiently alleged that she was performing her job duties at a satisfactory level at the time she was terminated, she still has not provided evidence supporting a reasonable inference that her termination was discriminatory. Ms. Showe states that she was treated differently from three male counterparts "who exhibited behaviors which indicated they also suffered from significant impairments" (Amend. Compl. ¶ 23; *see id.* ¶¶ 30-31) and that this differential treatment was discriminatory. (Amend. Compl. ¶ 32.) She offers no description, however, of: (a) how their positions were similar to hers[5], let alone what her own position entailed; (b) what these "significant impairments" were or how they were similar to hers; or (c) how much leave they took for their disabilities (and how that affected their performance of job functions). Nor does she provide information on whether other women with perceived disabilities worked at MDPSCS and how they were treated. Without at least some detail of these issues, the court cannot infer that her subjection to a physical examination and subsequent termination were motivated by her gender, and not by the effect of her particular disability on her particular job. Accordingly, Ms. Showe has failed in her amended complaint to

---

[5] Indeed, by her own account, none of these three men – Gary Carter, John Paige, and Leonard Vaughan – shared her position, and at least one, Leonard Vaughan, occupied a position of seniority over her. (*See* Amend. Compl. ¶ 23 (describing Gary Carter's position as "Correctional Case Management Specialist II," John Paige's as "Correctional Captain," and Leonard Vaughan's as "Correctional Case Management Manager")).

make out the fourth element of a *prima facie* gender discrimination claim.  *Cf. Gilliam v. South Carolina Dep't of Juvenile Justice*, 474 F.3d 134, 142-43 (4th Cir. 2007) (finding plaintiff's Title VII claim not to be actionable where, to support her claim, she "made several general statements of dissimilar treatment, [but] she provided very few specifics.").

## **CONCLUSION**

For the foregoing reasons, Ms. Showe's motion to file an amended complaint will be denied.  A separate Order follows.


    August  28,   2009                                /s/
Date                                          Catherine C. Blake
                                              United States District Judge

11